By the Court,

Beardsley, J.
If it had clearly appeared on the trial that no written lease was executed by the plaintiff below, the defendant might have urged, with plausibility at least, that his engagement to pay rent was without consideration, and consequently invalid. He had not been benefit-ted by the_ occupation of the' premises, for he had not even gone into possession; and as the term was five years, I do not see that he could have acquired any title or interest without a lease in writing. The statute is direct and explicit on the subject. (2 R. S. 134, §§ 6, 8. And see Taylor’s Land. & Tenant, 185; Comyn’s Land. & Tenant, 110; Frontin v. Small, 2 Ld. Raym. 1418; 2 Stra. 705, S. C.; Andrew v. Pearce, 1 New Rep. 158.) But such" proof was not given at the trial, nor was the point there made, and it cannot now be considered.
Assuming that there was a valid demise of the house and store for five years, several questions arise on the proof offered at the trial.
1. The defendant offered to prove that, when the premises were let, the plaintiff promised by parol to put them in good repair; and this was objected to and excluded. There are cases in which the promise or engagement of one party to a contract is in writing, and that of the other rests in parol; and where both are nevertheless bound. (2 Phill. Ev. 772, 8th Lond. ed.; Cowen Hill’s Notes to Phill. Ev. p. 1471 to 1475.) But in this case, if the house and store were demised for five years, it must have been by a lease in writing; for nothing short of that would be valid under the statute. The written lease therefore was the best evidence of what was agreed on the part of the plaintiff below, and nothing could be added to it by parol. This is a familiar rule of evidence, ap *86 plicable to all agreements which are reduced to writing. (1 Phill. Ev. 561, 2, and Cowen & Hill’s Notes, p. 1466, et seq.) If no such lease was in fact executed, that should have been proved by way of avoiding the engagement to pay rent; for it would have shown that there was no legal consideration for the engagement. But the offer was to prove a parol agreement, made at the time of the letting, to put the premises in repair. This was inadmissible, and properly excluded by the court.
2. The defendant offered to show that the house was altogether unfit for occupation, and wholly untenantable. The principle on which this offer was made, however, cannot 1 think be maintained. There is no such implied warranty on the part of the lessor of a dwelling house, as the offer assumes. It is quite unnecessary to look at the common law doctrine as to implied covenants and warranties, or to its modification by statute. (3 R. S. 594.) That doctrine has a very limited application for any purpose to a lease for years, and in every case has reference to the title, and not to the quality or condition of the property. The maxim caveat emptor applies to the transfer of all property, real, personal and mixed; and the purchaser generally takes the risk of its quality and condition, unless he protects himself by an express agreement on the subject. A sale of provisions for domestic use, (Van Bracklin v. Fonda; 12 Johns. Rep. 468,) and a demise of ready furnished lodgings, (Smith v. Marrable, 1 Carr, & Marshm. 479,) may be mentioned as exceptions; for as to these, the law implies a warranty that the former are wholesome, and the latter free from nuisance. (See Chit. On Contr. 449 to 452, 5th Am. ed.)
I admit there are recent cases in the English courts which seem to countenance a somewhat more extended application of the principle of implied warranty to property demised: but none of them come up to what is insisted upon in this case. The cases alluded to were actions to recover damages for use and occupation, and were therefore governed by principles which cannot be applied to an action founded exclusively on a covenant to pay rent. *87 The action for use and occupation is unknown to the common law, but is wholly a statute remedy.(a) The English statute (11 Geo. 2, ch. 19, § 14) provides, that where the agreement is not by deed, a landlord may recover “ a reasonable satisfaction for the lands, tenements or hereditaments, held or occupied by the defendant or defendants, in an action on the case, for the use and occupation of what was so held or enjoyed:” and if any agreement, not being by deed, shall be proved, by which a certain rent was reserved, it may be used “ as an evidence of the quantum of the damages to be recovered.” (Comyn’s Land. & Tenant, 435.) An action is maintainable under this statute to recover for the use of premises while they were in the actual occupation or legal possession of the defendant. It is not a remedy coextensive with an action to recover rent by the mere force of the contract, and will not lie in all cases where such an action can be maintained. Rent, as such, is not recovered in the action for use and occupation, but a reasonable satisfaction for what has been occupied or held and enjoyed. If it appear that a Certain rent was agreed to be paid, that is evidence as to the amount which the landlord should recover, but is not decisive. In general, where the defendant is liable for use and occupation, the amount of rent agreed to be paid will be the proper measure of damages; but, Under the peculiar terms of the statute, a departure from the sum agreed has in various instances been allowed. (Comyn’s Land. & Tenant, 435, et seq.; Stephen’s N. P. 2717; Naish v. Tatlock, 2 H. Bl. Rep. 319; Richardson v. Hall, 1 Brod. & Bing. 50; Woolley v. Watting, 7 Carr. & Payne, 610; Pinero v. Judson, 6 Bing. 206; How v. Kennett, 3 Adol. & Ellis, 659; Chitty On Contr. 370, 872, 5th Am. ed.)
The former statute of New-York was very similar in its terms to that of 11 Geo. 2. (1 R. L. 444, § 31.) The words “ held or occupied” are to be found in both. Under these words *88 it has been adjudged that assumpsit for use and occupation will lie, “ although there has not been an actual occupation for the-whole of the time in respect of which the action” is brought; some of the judges observing that a legal possession was sufficient to maintain it. (Pinero v. Judson, supra.) But this principle is not to be regarded as settled in the English courts. (See the cases above referred to.)
The words “ held or occupied” are not in our present statute. (1 R. S. 748, § 26.) That authorizes the recovery of “ a reasonable satisfaction for the use and occupation of any lands or tenements, by any person, under any agreement not made by deed.” These words are certainly susceptible of a more restricted construction than those of 11 Geo. 2, and might very well be taken to limit the recovery to the period,of actual use and occupation. I am not aware that this precise point has been made under our present statute, although it might have been in Westlake v. De Graw, (25 Wend. 669.) The present case does not call for any opinion upon it.
One of the cases cited by the counsel for the plaintiff in error to maintain the position that here was an implied warranty by the lessor that the dwelling house was in good repair, was Smith v. Marrable, (1 Carr. & Marshm. 479.) That was an action of assumpsit for the use and occupation of a furnished house. The defendant took possession, but quit at the end of four days, because the beds, mattrasses and bedsteads were infested by bugs. A week’s rent was tendered by him, but the action was prosecuted to recover for the residue of the term,which was four weeks. Lord Abinger, C. B., before whom the cause was tried, charged the jury that “ every person who undertakes to let a ready furnished house or apartment, is bound ' to take care that the premises are free from nuisances and he left it to the jury to decide whether this house was in that condition. The jury found for the defendant, and on a motion for a new trial the court agreed that the charge was right.
The case of Cowie v. Goodwin, (9 Carr. & Payne 378,) was also referred to by the counsel for the plaintiff in error. *89 There it was shown that a wall of the house gave way, whereby the kitchen was filled with filth and rendered useless. The tenant quit in consequence of this state of the premises, and an action for use and occupation was brought against him. Lord Denman asked “ the jury whether these premises were unfit for proper and comfortable occupation, and if the defendant had bona fide quitted the apartments as soon as he could procure others.” The jury answered both questions in the affirmative, and the plaintiff elected to be nonsuited.
In Salisbury v. Marshall, (4 Carr. & Payne, 65,) the premises became ruinous before the expiration of the tenant’s term? and he abandoned them. At the commencement, the landlord said he would put them in good repair, and something had been done for that purpose. In an action for use and occupation, Chief Justice Tindal laid some stress on the peculiar words of the lease, and told the jury that they must determine “ whether the premises were put into such a reasonable and decent state of repair, as that a decent family might be supposed to occupy them during that time “ whether such repairs had been made at the time when the defendant was to go in, as that they could be reasonably expected to continue during the tenancy, and give the tenant the decent enjoyment of the premises.” The jury found for the defendant. (See also Collins v. Barrow, 1 Mood. & Rob. 112; Shepherd v. Pybus, 3 Mann. & Grang. 867; Edwards v. Hetherington, 7 Dowl. & Ryl. 117, R. & M. 268, S. C.; Nation v. Tozer, 1 Cr. Mees. & Rosc. 172, 4 Tyr. 561, S. C.)
The above cases hardly admit of classification, and it would be difficult to deduce from them any clear and satisfactory general principle. The remarks of Chief Justice Tindal, in Izon v. Gorton, (5 Bing. N. C. 501,) apply to them collectively, and let us into the peculiar grounds on which they were determined. He said: “ The cases referred to in the argument, in which the tenant has been allowed to withdraw himself from the tenancy, and to refuse payment of rent, will be found to be cases where there has been either error or fraudulent misdescription of the premises which were the subject of *90 the letting, ox where the premises have been found to be uninhabitable by the wrongful act or default of the landlord himself.” (And see Chitty on Contr. 338; Stephens N. P. 2722.)
None of these authorities apply to the present case, in the aspect in which it has been thus far examined. There was no misdescription of the premises let, either by mistake or fraud. And where no particular agreement to put the premises in repair is made, the tenant takes them for better or for worse, and the landlord is under no obligation to repair. (Mumford v. Brown, 6 Cowen, 475; Comyn's Land. & Tenant, 185; Chit. on Contr. 338, Taylor’s Land. & Tenant, 166; Westlake v. De Graw, 25 Wend. 669.) There was no error in rejecting the evidence which was offered to prove that the house was out of repair.
3. The defendant’s covenant bears date on the 19th of February, 1844, but the term was to commence on the first of May thereafter. He offered to prove “ that at the time of the hiring there was a cistern for catching rain water in the attic of the premises, which was removed by the plaintiff before the first of May, 1844; that this was the only cistern on the premises, and was absolutely necessary, both for rain water, and the purifying of the privy, which was in the attic.” This was objected to by the counsel for the plaintiff, and excluded by the court.
In determining the question arising upon this offer, a legal demise of the premises is to be assumed. The plaintiff cannot be permitted to deny that he made a valid lease. On that point he is estopped by his position, and the claim he makes to recover rent. The defendant was therefore entitled to the possession of the premises at the, specified time, and in the same condition in which they were when demised. We must assume, moreover, that the cistern was a fixture, constituting a part of the demised premises; and, according to the offer made, it was wrongfully removed by the lessor, before the term was to commence, leaving the house in a condition wholly unfit for the habitation of any human being. If such was the fact, the defen *91 dant was justified in refusing to take possession of the house, and he ought not to pay rent. This testimony was therefore improperly rejected, and the judgment should be reversed.
Judgment reversed.

 See note (b) to Beverley v. Lincoln, (8 Adol, & Ellis, 829.)